1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13

| | |
|---|---|
| CECILIA L. WIMER,<br><br>Plaintiff,<br><br>v.<br><br>INFLATION SYSTEMS, INC., a Delaware Corporation,<br><br>Defendant. | NO.  CV-05-285-RHW<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

14
15
16

Before the Court is Defendant's Motion for Summary Judgment (Ct. Rec. 24).  The motion was heard without oral argument.

### FACTS

17
18
19
20
21
22

Plaintiff Cecilia Wimer was a long-time employee of Defendant Inflation Systems, Inc., at their Moses Lake facility.[1]  Plaintiff was laid off in 2005.  She believes Defendant terminated her employment because of her disability, age, and gender, and is bringing a claim under the Washington Law Against Discrimination, Wash. Rev. Code § 49.60.180.[2]

The following facts are construed in the light most favorable to Plaintiff:

23
24
25

Plaintiff began her employment with Defendant in September 1996, as a temporary employee.  She worked as an operator on the label machine.

26
27
28

[1]The Inflation Systems facility in Moses Lake manufactures various types of propellant (pyrotechnic materials) that are used in automotive airbags.

[2]The Court has jurisdiction based on diversity.  28 U.S.C. § 1332.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

Subsequently, she was offered a full-time, regular assembly line position.  At the time of her move to the regular position, she underwent a pre-employment physical that disclosed she had tendinitis in her right shoulder.  She began working full-time regular employment in November 1997, and she held a variety of different jobs on the inflator assembly lines and elsewhere in the facility.[3]

In October 2002, Plaintiff began working the third shift in a weight and measure position.  This position performed a quality inspection on the size and density of the finished propellant wafers coming out of the presses that were suspected of having a possible quality problem.  Initially, there were five or more employees in the weights and measure position for each of the three shifts.  As automated inspection machines were developed and quality improvements in the manufacturing process were made, the number of weight and measure positions decreased to two per shift by the spring of 2005.  The workload continued to decrease, and Defendant found it difficult to keep the weight and measure positions busy.

In March 2005, Defendant decided to consolidate the weight and measure

---

[3]Between November 1997 and August 2001, Plaintiff changed positions several times and between different departments. She ran the filter press on the NADI (driver side bag) assembly line, the NAPI (passenger side air bag) assembly line, and finally, the SPI (programmable inflator) assembly line.  In May 2002, Plaintiff worked on the Enhancer Cup line placing initiators into the enhancer cup, which make up a component on the inflator.  Around this time,  Plaintiff filed a Shift Preference Form, in which she requested that she be assigned to the third shift, which operates from 11 p.m. to 7 a.m., to allow her to care for her mother during the day.  In October 2002, the third shift was eliminated, and Plaintiff moved to a weight and measure position to allow her to continue to work the third shift.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2**

inspection work into the job performed by the propellant operators to increase flexibility to staff the propellant work and address the declining weight and measure work load.  Consequently, the weight and measures employees were told that they would have apply for other jobs in the facility because the weight and measure position was being eliminated as a stand-alone position.

At the time of the job consolidation announcement, the full-time positions that were available were the propellant operator jobs.[4]  This was a physically demanding position that required frequent lifting of heavy quantities of raw, in-process and finished materials, repeated carrying of heavy quantities of in-process propellant materials upstairs, repeated scooping of large quantities of in-process material out of machines while in a bent position, and wearing a full-face respirator while doing this work.  Specific requirements included: carrying 30 pounds of propellant mix up five flights of stairs to load the comil machine every two minutes for an eight hour shift; repeated lifting of 30 pound buckets and scooping 160 pounds of material from a bent position over a bowl; carrying 45 pounds up several steps to pour into a machine; and operating the gladiator press and dismantling and re-assembling its 35 pound tooling pieces.

Each job applicant for the propellant operator jobs was required to perform a job tryout before interviewing and being considered for the job.  The plant nurse administered the tryout, which consisted of several parts.  First, the candidate was asked to read the propellant operator job description and state whether or not the candidate believed he or she could perform the job.  The candidate was then asked to perform physical tasks of the propellant operator job, including walking up and down a flight of nine steps while carrying a 30 pound bucket and loosely wearing a

---

[4]By the time of the job consolidation, several of the other weight and measure employees had already applied for and had been assigned or approved for other positions in the plant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

respirator, five times, then a short break, and then another five times.  The candidate was then asked to lift sample gladiator tooling, which weighs 35 pounds, above shoulder height fifteen times.  The candidate was then asked to lift and stack 40 pound packs, one on top of the other, four times.

The candidate was asked questions concerning how they felt over the course of the tryout, and his or her responses were recorded on the tryout form.  After completing the tryout, the candidate was asked whether he or she was willing to do this work and was still interested in the position.

On May 25, 2005, Plaintiff underwent the propellant operator tryout and interview for the position.[5]  According to Plaintiff, her tryout was given in reverse order, that is, first she performed the stacking task, then the gladiator tool install, and finally, the comil loading.  The plant nurse testified that Plaintiff struggled and did not complete all aspects of the physical evaluation of the job tryout.  The plant nurse recorded that Plaintiff did not complete the gladiator tooling lift section because from his observation, she did not lift it above shoulder height.

Plaintiff became very winded and out of breath during the tryout section that requires climbing the stairs carrying a 30 pound bucket.[6]  She had to stop on more than one occasion before finishing the five sets of stairs.  She was unable to answer the nurse's questions for several minutes.  The plant nurse recorded that Plaintiff was exhausted and winded.  Plaintiff states that her breathing returned to normal over a matter of seconds as the nurse and Plaintiff returned to the plant nurse's office.

At the conclusion of the tryout and upon questioning, Plaintiff stated that she

[5]This was the last week for her to seek another position before the weight and measure position was consolidated into the propellant operator job.

[6]It is undisputed that Plaintiff has smoked cigarettes for forty-two years, averaging about one-half a pack or more per day.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

did not know if she could do the job.  It is undisputed that she did not indicate that there was any medical condition or restriction that was impacting her ability to perform the job or that might require an accommodation to perform the job.  The plant nurse recorded on Plaintiff's tryout form that she would need an "accommodation" in the job, which meant that she would need to be excluded from certain work in the propellant operator job.  Consequently, the plant nurse did not recommend Plaintiff for the position.

Scott Isherwood and Pat Conley, the Propellant Managers, interviewed Plaintiff for the propellant operator position following her job tryout.[7]  Isherwood informed Plaintiff during the interview that he had been told that she had difficulty with her breathing when performing the tryout, and he expressed doubts about her ability to do the propellant operator job.  Plaintiff indicated that she did not know if she could do the job.  Plaintiff asked if she could stay in her weight and measure position.  It is undisputed that she did not indicate that there was any medical condition or restriction that was impacting her ability to perform the job or that might require an accommodation to perform the job.

At the conclusion of the interview, Isherwood informed Plaintiff that she was not qualified because he did not think she was capable of performing all aspects of the job and instructed Plaintiff to check with human resources to see if there were other job openings.  Immediately after the interview, Plaintiff found Human Resources Manager Ryan Hopkinson in the lunch room, and asked him if there were any positions available for her in assembly.  During the conversation, Plaintiff stated that it was her understanding that the root of the plant nurse's concerns were her shoulder or knee problems, and Hopkinson responded that "they were looking at the overall picture."  It is undisputed that Hopkinson was not

---

[7]The Propellant Managers make the decision whether to offer the candidate a propellant operator position following an interview for the job.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

1    involved in the propellant operator interview or in the decision not to hire Plaintiff.

2        Ultimately, the three vacant propellant operator positions were filled by Jack

3    Smith, an older male; Charlotte Tapio, a younger female; and Howard Hartzell, a

4    younger male.  Both Smith and Tapio were hired in April 2005.  Mr. Hartzell was

5    hired in late May 2005.

6        On August 26, 2005, Plaintiff filed her Complaint in Grant County Superior

7    Court, alleging discrimination based on disability or perceived disability, age, and

8    gender.  Defendant removed the action to the Eastern District of Washington on

9    September 19, 2005.

10                              **DISCUSSION**

11        Defendant moves for summary judgment on all of Plaintiff's claims for three

12    reasons: (1) she is not disabled, nor was she perceived as disabled; (2) she was not

13    disparately treated in the process and qualifications required to obtain the

14    propellant operator job; and (3) she was denied the propellant operator job because

15    she was not qualified, and she cannot show a pretext for discrimination due to the

16    undisputed concerns raised concerning her ability to perform the job.

17    **A.    Standard of Review**

18        Summary judgment is appropriate if the "pleadings, depositions, answers to

19    interrogatories, and admissions on file, together with the affidavits. . . show that

20    there is no genuine issue as to any material fact and that the moving party is

21    entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  There is no genuine

22    issue for trial unless there is sufficient evidence favoring the nonmoving party for a

23    jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477

24    U.S. 242, 250 (1986).  A genuine issue of material fact exists when "reasonable

25    minds could differ as to the import of [the] evidence." *Id*. at 250-51.  Moreover, if

26    the evidence presented to the court is not significantly probative or merely

27    colorable, then summary judgment is appropriate. *Id.* at 249-50.  Further, the non-

28    moving party must produce "more than the mere existence of a scintilla of

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 6

evidence." *Id.* at 252.  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial," the trial court should grant the motion.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255.

**B.    Washington Law Against Discrimination**

Plaintiff is bringing her claims under the Washington Law Against Discrimination (WLAD).  Under the WLAD:

It is an unfair practice for any employer:

(2)    To discharge or bar any person from employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability . . .

(3)    To discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a disabled person . . .

Wash. Rev. Code § 49.60.180(2),(3).

**1.    Disability Discrimination**

Plaintiff alleges that she was laid off, or terminated, on account of her disability.  Washington law sets forth two different theories of disability discrimination: (1) failure to accommodate; and (2) disparate treatment.  *McClarty v. Totem Electric*, 157 Wash. 2d 214, 222 (2006).  Under both claims, Plaintiff has the initial burden to show that she is disabled.  *Id.*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

### a.    Whether Plaintiff is Disabled

Recently, the Washington Supreme Court adopted the definition of "disabled" that is set forth in the Americans with Disabilities Act of 1990. *See McClarty*, 157 Wash. 2d at 220.  In order to establish that she is disabled, Plaintiff must show that she has (1) a physical or mental impairment that substantially limits one or more of her major life activities, (2) a record of such an impairment, or (3) is regarded as having such an impairment.  *Id.* at 228.  A physical or mental impairment that is substantially limiting impairs a person's ability to perform tasks that are of central importance to a person's everyday activities.  *Id.* at 229.  Substantially limited means "[u]nable to perform a major life activity that the average person in the general population performs."  *Id.* (*quoting Toyota Motor Mfg. Ky., Inc. v. Williams,* 534 U.S. 184, 195 (2002).  A "substantial" limitation cannot include any impairment which interferes "in only a minor way with the performance of manual tasks," *Toyota*, 534 U.S. at 197.  The Supreme Court has held that the terms "need to be interpreted strictly to create a demanding standard for qualifying as disabled."  *Id.*

As a threshold matter, then, Plaintiff must show that she has a physical or mental impairment that is substantially limiting.  In her briefing, she suggests that because she could not catch her breath, Defendant was on notice that she could be suffering from chronic obstructive pulmonary disease, such as emphysema, and that Defendant was on notice that she suffered from tendinitis, based on her past history.  Because tendinitis can be associated with forms of arthritis, Defendant regarded her as being disabled.  Finally, Plaintiff argues that Defendant knew that she had knee problems, so it regarded her as having an impairment.[8]  In the end,

---

[8]In June 2004, Plaintiff sought treatment from her physician for "episodic right knee pain," but she did not report any information about her knee pain or treatments to the plant nurse, and she testified that she was not limited in any way

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

1    Plaintiff argues that the major life activity that was impaired was her working as a

2    propellant operator (Ct. Rec. 34 p. 8).

3          The Court concludes as a matter of law that this does not meet the definition

4    of "disabled." Specifically, 29 C.F.R. § 1630.2(j) sets forth the definition for the

5    phrase "substantially limits" with respect to the major life activity of working:

6          The term substantially limits means significantly restricted in the
           ability to perform either a class of jobs or a broad range of jobs in
7          various classes as compared to the average person having comparable
           training, skills and abilities. The inability to perform a single,
8          particular job does not constitute a substantial limitation in the major
           life activity of working.[9]

9          Additionally, case law has held that the inability to perform a single,

10   particular job does not constitute a substantial limitation. *See Benoit v. Technical*

11   *Mfg. Corp.*, 331 F.3d 166, 176 (1st Cir. 2003).

12         Here, the record demonstrates that Plaintiff has the ability to work a variety

13   of assembly jobs. The only job that she was unable to perform based on any

14   physical impairment was the job of propellant operator. Plaintiff's inability to

15   perform the propellant operator job does not constitute a substantial limitation in

16   the major life activity of working.

17         Also, Plaintiff cannot establish that Defendant perceived that she was

18   substantially limited in a major life activity due to her disabilities. First, at no

19   point in the job tryout or interview for the job did Plaintiff express that she had any

20   _____

21   by this pain and was not put on any work restrictions as a result of this treatment.

22         [9]The Washington Supreme Court adopted the ADA definition of disability,

23   in part, to allow courts to consult federal law in construing and applying similar

24   provisions in the WLAD. *Id*. at 230 n.10 ("Moreover, as a practical matter, there is

25   an abundance of authority interpreting the ADA that, while not binding upon our

26   disposition of state law claims . . ., they could assist us in construing and applying

27   similar provisions in the WLAD.). The court specifically cited to 29 C.F.R. §

28   1630.2(j)(2).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT ~ 9**

medical condition or limitation that was impacting her ability, nor did any of the Propellant Managers indicate anything to imply that they thought she was under any medical restrictions.  Second, the last medical information known to Defendant concerned her shoulder injury more than a year before her layoff.  Even then, she was released to full duty from this injury, with no restrictions on her ability to work.  Third, Plaintiff was found unqualified for the propellant operator position due to concerns over her ability to perform physically demanding tasks of the job.  These tasks were not associated with the daily activities of life.  Finally, even though Defendant was on notice regarding her tendinitis, it employed Plaintiff in a variety of different jobs over the course of her employment without any accommodations needed on the part of Plaintiff.

Plaintiff puts great weight on Mr. Hopkinson's comment that Plaintiff was not able to continue employment due to the "overall picture."  Plaintiff asserts that because this comment was made after Plaintiff and Mr. Hopkinson had been discussing her health issues, the Court should infer that Mr. Hopkinson regarded Plaintiff as being disabled.  The Court declines to make such an inference.  Mr. Hopkinson was just as likely referring to the overall financial and economic situation of the company, since the parties were also discussing what other jobs Plaintiff could apply for within the company.  Plaintiff herself testified that it was not clear what Mr. Hopkinson meant by this statement.  Plaintiff's assertion that Mr. Hopkinson's statement indicates that Defendant perceived her as being disabled is conclusory and speculative.

Moreover, even if the Court were to accept that Mr. Hopkinson was commenting on Plaintiff's health issues, there is nothing in the record to indicate that Mr. Hopkinson had anything to do with the decision not to hire Plaintiff.

The Court finds that there is an absence of genuine issue of material fact regarding whether Plaintiff is disabled.  Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has failed to established that she is in any way

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 10

substantially limited in a major life activity.

### b.    Disparate Treatment

To establish a disparate treatment on the basis of disability, Plaintiff must show that: (1) she is disabled; (2) she was doing satisfactory work; (3) she was discharged; and (4) she was replaced by someone who was not disabled. *Becker v. Cashman*, 128 Wash. App. 79, 85 (2005).  Establishment of a *prima facie* case creates a rebuttable presumption of discrimination. *Hill v. BCTI Income Fund-I*, 144 Wash. 2d 172, 181 (2001) *overruled on other grounds by McClarty*, 157 Wash. 2d 214 (2006).  The burden then shifts to the employer to produce a non-discriminatory reason for the employee's discharge. *Id.*  If the employer meets this burden, the presumption of unlawful discrimination is rebutted and the burden shifts back to the employee to show that the employer's stated reason for the discharge was, in fact, pretext. *Id.* at 182.  To survive summary judgment, the employee must show that a reasonable finder of fact could find that the employee's disability was a substantial factor motivating the employer's adverse actions. *Becker*, 128 Wash. App. at 85.  "This is a burden of production, not persuasion, and may be proved through direct or circumstantial evidence." *Id.* (*quoting Riehl v. Foodmaker, Inc.*, 152 Wash. 2d 138, 144 (2004).

The Court finds that, in addition to failing to show that she is disabled, Plaintiff has failed to show that Defendant's stated reason for the discharge was pretext.  The record demonstrates that Plaintiff was not hired for the propellant operator position due to concerns over her ability to perform the physically demanding tasks of the job.  Plaintiff has not shown that there are genuine issues of material fact regarding Defendant's stated non-discriminatory reason for not hiring her, and regarding whether this stated reason was pretext for disability discrimination.  Accordingly, summary judgment is appropriate on Plaintiff's disability discrimination claims.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 11

1          **2.    Age and Gender Discrimination**

2          To establish a *prima facie* case of age discrimination, Plaintiff has to show:

3   (1) she was within the statutorily protected age group; (2) she was qualified for the

4   position or doing satisfactory work; (3) she was not offered the position or she was

5   discharged; and (4) the position went to a significantly younger person, or she was

6   replaced by a younger person. *Domingo v. Boeing Employees' Credit Union*, 124

7   Wash. App. 71, 86-87 (2004); *Kuyper v. Dep't of Wildfire*, 79 Wash. App. 732, 735

8   (1995). Similarly, to establish a *prima facie* case of gender discrimination, she

9   must show that (1) she applied and was qualified for an available promotion or

10  position; (2) she was not offered the position; and (3) the promotion went to a

11  male. *Id.*

12         In both cases, once a plaintiff establishes a *prima facie* case, the burden

13  shifts to the defendant to produce evidence of a legitimate, non-discriminatory

14  reason for the employment decision. *Grimwood v. University of Puget Sound, Inc.*,

15  110 Wash. 2d 355, 364 (1988). If the employer meets its burden of showing a

16  non-discriminatory basis for its decision, the burden shifts back to the plaintiff to

17  establish that the reason given is merely a pretext for intentional discrimination.

18  *Id.*

19         Plaintiff cannot establish a *prima facie* case for age discrimination because

20  she cannot show that the position went to a significantly younger person. Plaintiff

21  relies on the fact that Howard Hartzell, who applied for the same position at

22  roughly the same time as Plaintiff, was hired for the open propellant operator

23  position. To establish the fourth prong of an age discrimination case, Plaintiff

24  must show that the replacement must be someone not in the protected class. *Kirby*

25  *v. City of Tacoma*, 124 Wash. App. 454, 466 (2004). Here, Mr. Hartzell, who was

26  born in 1956, is less than 10 years younger than Plaintiff, and he is within the same

27  protected class as Plaintiff. Moreover, as discussed above, Plaintiff cannot show

28  that she was qualified for the position. Likewise, Plaintiff is unable to show that

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

1  she was discriminated against on the basis of her gender because she cannot show

2  that she was qualified for the position.

3       Thus, viewing the record in the light most favorable to Plaintiff, she is

4  unable to show that she was qualified for the position, or that a significantly

5  younger person was hired in her place.  Summary judgment with regard to

6  Plaintiff's claims of age discrimination and gender discrimination is appropriate.

7       Accordingly, **IT IS HEREBY ORDERED:**

8       1.    Defendant's Motion for Summary Judgment (Ct. Rec. 24) is

9  **GRANTED**.

10      2.    The District Court Executive is directed to enter judgment in favor of

11  Defendant.

12       **IT IS SO ORDERED.**  The District Court Executive is directed to enter

13  this Order, provide copies to counsel, and close the file.

14       **DATED** this 14th day of December, 2006.

15

16                    *S/ Robert H. Whaley*

17                    ROBERT H. WHALEY
                      Chief United States District Judge

18

19

20

21  Q:\CIVIL\2005\Wimer\sj.wpd

22

23

24

25

26

27

28

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 13**